

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| DEBRA M. MOORE, | ) |
| | ) |
| Plaintiff | ) Civil No. 06-234-TC |
| | ) |
| v. | ) FINDINGS AND |
| | ) RECOMMENDATION |
| JO ANNE B. BARNHART, | ) |
| | ) |
| | ) |
| Defendant | ) |

SARA L. GABIN
Five Centerpoint Drive, Suite 400
Lake Oswego, Oregon 97035
    Attorney for Plaintiff

KARIN J. IMMERGUT
United States Attorney
NEIL J. EVANS
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2904

MICHAEL McGAUGHRAN
Regional Chief Counsel
RICHARD A. MORRIS
Special Assistant U.S. Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 901
Seattle, WA 98104-7075

    Attorneys for Defendant

COFFIN, Magistrate Judge:

Plaintiff Debra M. Moore seeks judicial review of the Social Security Commissioner's final decision denying her application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). For the reasons below, I recommend the Commissioner's decision be affirmed.

## BACKGROUND

Born in 1955, Moore complete two years of college. Tr. 97, 120.[1] Between 1987 and 1996 Moore worked as an administrative assistant, sales associate, deli worker, and secretary. Tr. 115.

Moore alleges disability since October 1, 2000 due to "pain, swelling, and deterioration of spine." Tr. 114. Her claim was initially denied and a hearing was held before an Administrative Law Judge (ALJ). The ALJ issued an unfavorable decision on April 6, 2005. Tr. 20-32. The Appeals Council denied review on January 20, 2006, making the ALJ's decision final. Tr. 8-10. Moore seeks review of this finding.

## DISABILITY ANALYSIS

The Commissioner engages in a sequential process encompassing between one and five steps in determining disability under the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Moore challenges the ALJ's evaluation of the

---

[1] Citations "Tr." refer to indicated pages in the official transcript of the administrative record filed with the Commissioner's Answer on June 19, 2006 (Docket #9).

2 - FINDINGS AND RECOMMENDATION

evidence and his conclusions at step five.

At step one, the ALJ determines if the claimant is performing substantial gainful activity. If she is, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I). At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the twelve month duration requirement. 20 C.F.R. §§ 404.1509 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does not have such a severe impairment, she is not disabled. *Id.*

At step three, the ALJ determines if the severe impairment meets or equals a "listed" impairment in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment is determined to equal a listed impairment, the claimant is disabled.

If adjudication proceeds beyond step three the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite limitations imposed by his impairments. 20 C.F.R. §§ 404.1520(e), 416.920(e), Social Security Ruling (SSR) 96-8p. The ALJ uses this information to determine if the claimant can perform past relevant work at step four or work in the national economy at step five.

If proceedings reach step five, the Commissioner must determine if the claimant is capable of performing work existing in the national economy. *Yuckert*, 482 U.S. at 142; *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

The initial burden of establishing disability rests upon the claimant. *Tackett*, 180 F.3d at

3 - FINDINGS AND RECOMMENDATION

1098. If the process reaches the fifth step the burden shifts to the Commissioner to show that jobs exist in the national economy in the claimant's residual functional capacity. *Id.* If the Commissioner meets this burden the claimant is not disabled. 20 C.F.R. §§ 404.1566, 404.1520(g), 416.966, 416.920(g).

## THE ALJ'S FINDINGS

The ALJ found Moore's cervical and lumbar degenerative disc disease severe impairments. Tr. 22, 31. The ALJ found Moore's mental impairments, including depression, post traumatic stress disorder, personality disorder, and substance addiction disorder severe, resulting in "mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, and pace." Tr. 22, 26. The ALJ found Moore's allegations regarding her limitations "not entirely credible." Tr. 31. The ALJ assessed Moore's RFC:

> The claimant retains the residual functional capacity to perform a modified range of sedentary work with lifting generally in the range of light exertion. She can lift and/or carry up to 10 pounds frequently and up to 20 pounds occasionally with the left hand. Lifting and/or carrying with the right hand is limited to a maximum of 10 pounds. She can stand and/or walk for 15 minutes at one time up to two hours in an eight-hour workday. She can sit for 30 minutes at one time with no overall limit. She can occasionally climb, balance, stoop, kneel, crouch, or crawl. She is further limited to work which requires no constant use of the right hand, no above shoulder reaching with the right upper extremity, and no concentrated exposure to hazards. She is limited to simple, routine, repetitive work with no public contact and only occasional interaction with co-workers.

Tr. 31.

Drawing upon a vocational expert's testimony, the ALJ subsequently found that Moore's RFC

4 - FINDINGS AND RECOMMENDATION

allows her to perform work in the national economy at step five. Tr. 31. The ALJ therefore found Moore not disabled. Tr. 32.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Commissioner for Social Security Administration*, 359 F.3d 1190, 1193 (9th Cir. 2004). This court must weigh "both the evidence that supports and detracts from the Commissioner's conclusion." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (citing *Martinez v. Heckler*, 807 F.2d. 771, 772 (9th Cir. 1986)). The reviewing court "may not substitute its judgement for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). In reviewing a credibility finding, the court must consider whether the Commissioner provided "clear and convincing reasons" for finding a claimant not credible. *Reddick v. Chater*, 157 F.3d, 715, 722 (9th Cir. 1998). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. *Magallanes*, 881 F.2d at 750; *see also Batson*, 359 F.3d at 1193.

## DISCUSSION

Moore contends the ALJ arrived at an inaccurate RFC assessment because he improperly rejected Moore's symptom testimony and improperly evaluated the medical evidence. Moore subsequently claims the ALJ made an improper step five finding because the ALJ solicited vocational expert testimony based upon an inaccurate RFC calculation.

## I. Moore's Credibility

Moore suggests the ALJ improperly assessed her "symptom evidence" because the record supports her disability claim. Pl. Opening Br. 17. Moore also suggests that "the ALJ failed to explain why Moore's basic daily activities and other isolated events he identifies dispel" Moore's "orthopedic pathology." Pl. Reply Br. 3. Moore does not directly challenge the ALJ's specific credibility findings, instead pointing to medical evidence produced by examining psychologists Drs. Cooley and Wong-Ngan, examining physician Dr. Cheek, treating physicians Drs. Schafir, Wayson, and Mills, nurse practitioner Dugan, and an unidentified "Vandyke" (presumably Dr. Van Sickle, who treated Moore during her incarceration). Pl. Opening Br. 18.

### *Credibility Analysis*

The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). In construing credibility findings, the ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). Once a claimant has shown an underlying impairment, the ALJ may not disregard symptom testimony "solely because it is not substantiated affirmatively by objective medical evidence." *Robbins v. Social Security Administration*, 446 F.3d 880, 883 (9th Cir. 2006). However, the ALJ may consider the treatment record as one of several factors in determining a claimant's credibility regarding his symptoms. *Connett v. Barnhart*, 340 F.3d 871, 873 - 874 (9th Cir. 2003), *Smolen*,

80 F.3d at 1284.

Contrary to Moore's submission, a relationship must exist between a claimant's symptom testimony and an underlying impairment:

> A claimant who alleges disability based on subjective symptom testimony "must produce objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged...' " The *Cotton* test imposes only two requirements on the claimant: (1) she must produce objective medical evidence of an impairment or impairments and (2) she must show that the impairment or combination of impairments *could reasonably be expected to* (not that it did in fact) produce some degree of symptom.
>
> The claimant need not produce objective medical evidence of the pain or fatigue itself, or the severity thereof.

*Smolen*, 80 F.3d at 1281-82 (citations omitted)(emphasis original).

Additionally, the ALJ may employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements regarding symptoms by the claimant. *Smolen*, 80 F.3d at 1284.

The ALJ cited several reasons for questioning Moore's credibility. They include: objective medical evidence of record; Moore's failure to seek treatment for her headaches; evidence of record suggesting Moore exaggerated her symptoms; possible evidence of malingering; suggestion of secondary gain; Moore's inconsistent statements regarding her substance abuse; and Moore's criminal history. Tr. 27-28. Each of these is addressed below.

### *Objective Medical Evidence*

Moore cites medical evidence concerning various diagnoses, all of which the ALJ included in his severity findings. These impairments include cervical and lumbar degenerative

7 - FINDINGS AND RECOMMENDATION

disc disease severe impairments, depression, post traumatic stress disorder, personality disorder, and substance addiction disorder. Tr. 22, 26, 31. However, the ALJ subsequently found that the treatment record did not support disabling levels of impairment. Tr. 31. This is an appropriate consideration in concert with the other factors raised by the ALJ, discussed below. *Smolen*, 80 F.3d at 1284.

The ALJ also noted that no objective medical evidence supports Moore's claim of impaired memory. Tr. 28. Here the ALJ cited examining psychologist Dr. Cooley. *Id.* Because Dr. Cooley's report made no finding that Moore's memory was impaired (Tr. 316-17), the ALJ appropriately based this finding upon the record. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2004). If no underlying impairment exists, the ALJ is not required to consider a claimant's symptom testimony. *Smolen*, 80 F.3d at 1281-82. The ALJ's citation to the medical evidence in his credibility finding should be sustained.

### *Evidence of Exaggeration and Malingering*

Because the ALJ found Moore impaired by the conditions described above, absent a finding of malingering, the ALJ was obliged to provide clear and convincing reasons for dismissing her symptom testimony. *Smolen*, 80 F.3d at 1281-2. Here, the ALJ noted Moore's reports that she could not walk and physician observations that she was "observed to be standing, moving around, and 'doing quite well.'" Tr. 27, 241. The ALJ also noted a comment by Moore's treating physician, Dr. Mills: "Suspect pt. may be embellishing symptoms. Noted when pt. was leaving she was able to put her coat on in the hall and abduct her R shoulder to 90 agrees without painful expression while during exam she was unable to move from side to side without

8 - FINDINGS AND RECOMMENDATION

significant pain." Tr. 27, 450. The ALJ's exaggeration findings are based upon the record and should be sustained. For this reason, the ALJ was not even obliged to give clear and convincing reasons for discrediting Moore's testimony. *Smolen*, 80 F.3d at 1281. Moore's argument that the ALJ failed to consider Dr. Mills' report in his credibility finding fails. The ALJ's exaggeration finding should be sustained.

### *Failure to Seek Treatment*

The ALJ noted that Moore did not seek treatment for her headaches prior to November 2004. Tr. 27. Inability to afford treatment is an acceptable reason for not seeking treatment. *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995). However, Moore makes no suggestion that she could not afford treatment, and records produced during her incarceration (when treatment was provided to Moore without cost) do not support her headache allegation. Tr. 207-237. The record contains one citation to headaches: in August 2003 Moore's physician made a transient record to her headache report, which the physician ascribed to muscle strain Tr. 369-70. No other physician of record suggests Moore sought treatment for headaches. The ALJ reasonably suggested Moore failed to seek treatment for her alleged headache impairment. *See Batson*, 359 F.3d at 1193.

### *Moore's Inconsistent Statements*

The ALJ noted that Moore was inconsistent in reporting her drug use. Tr. 28. "Statements that appear less than candid" may support a negative credibility finding. *Smolen*, 80 F.3d at 1284. The ALJ's finding that Moore's denial of drug and alcohol use was contravened by the toxicology testing is supported by the record and supports a negative credibility finding.

### *Secondary Gain*

The ALJ also suggested that Moore's application was motivated by secondary gain. Tr. 27. Generally, this court does not sustain such inference. By definition, applications for disability insurance is an application for financial assistance. If desire or expectation of obtaining benefits were sufficient to discredit a claimant, no claimant would be found credible. *Ratto v. Secretary of Health and Human Services*, 839 F. Supp. 1415 at 1428 - 29 (D. Oregon 1993). The ALJ's inference of secondary gain should not be sustained, but, all things considered, is harmless error.

### *Moore's Conduct and Criminal History*

Finally, the ALJ noted Moore's conduct and criminal history, including her methamphetamine abuse, "evasive" demeanor regarding that abuse, and her alleged unawareness that methamphetamine was manufactured in her apartment. Tr. 28. Because the ALJ may consider conflicts between a claimant's conduct and her testimony in evaluating credibility, observations regarding Moore's criminal behavior are appropriate. *Smolen*, 80 F.3d at 1284, *see Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004).

### *Credibility Conclusion*

In summary, the ALJ provided sufficient reasons for failing to credit Moore's testimony that she experiences disabling impairment under Social Security standards. The ALJ findings of insufficient medical evidence, exaggeration with possible malingering, inconsistent statements, and conduct suggesting poor credibility are supported by the record. These findings are based upon a rational reading of the record under the proper legal standards. *Magallanes*, 881 F.2d at

750, *Batson*, 359 F.3d at 1193. The ALJ's credibility determination should be sustained.

## II.  Medical Source Statements

Moore suggests the ALJ improperly evaluated the opinions of examining psychologists Drs. Cooley and Wong-Ngan. Moore also suggests the ALJ "rejected completely" the opinion of examining physician Dr. Cheek. Pl. Opening Br. 18-19. In her credibility argument, Moore additionally insinuates the ALJ failed to explain weight given to the opinions of Drs. Schafir, Mills, and Wayson.

### *Legal Standard*

Generally, a treating physician is accorded greater weight than an examining physician, and an examining physician is accorded greater weight than a reviewing physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 2003). The ALJ is responsible for evaluating medical evidence and resolving any evidentiary ambiguities or conflicts. *Edlund*, 253 F.3d at 1156, *Magallanes*, 881 F.2d at 750.

### *Examining Psychologist Norvin Cooley, Ph.D.*

Moore suggests "the ALJ failed to explain what weight he has given" Dr. Cooley's opinion. Pl. Opening Br. 18. "Instead, he has accepted only the portion of Cooley's report finding lack of candor over drug issues, disdaining the remainder for Cooley having been hired by Moore." *Id.*

The ALJ did not entirely reject the remainder of Dr. Cooley's opinion. The ALJ noted Dr. Cooley's January 2003 examination and GAF analysis, and included Dr. Cooley's affirmative

11 - FINDINGS AND RECOMMENDATION

diagnoses of depression, post traumatic stress disorder, methamphetamine abuse, and personality disorder in his severity finding. Tr. 22, 29. The ALJ concluded, "Dr. Cooley's opinion is ... given less weight because I note that his services were procured by the claimant's court-appointed defense attorney." Tr. 30.

Dr. Cooley twice examined Moore in November 2002 and January 2004. Tr. 306-318. Dr. Cooley also submitted a letter for proceedings regarding Moore's methamphetamine charge. Tr. 363-65. Dr. Cooley administered a clinical examination and testing, and subsequently diagnosed Moore with recurrent major depression, post traumatic stress disorder, amphetamine abuse, and a paranoid personality disorder. Tr. 316-17. Dr. Cooley ruled out diagnoses of "amphetamine induced psychotic disorder with delusions," and "schizophrenia, paranoid type." Tr. 317. Dr. Cooley made no finding regarding Moore's allegedly impaired memory.

Dr. Cooley's opinion was solicited by Moore's attorney in conjunction with her criminal charges in order to determine if Moore could aid and assist in her own defense. Tr. 363. The purposes for which medical reports are obtained generally does not provide a legitimate basis for rejecting them. *Lester*, 81 F.3d at 837. Therefore, the ALJ's handling of Dr. Cooley's opinion on this basis may be inappropriate. However, an ALJ is not required to discuss evidence "neither significant nor probative." *Howard v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003). The ALJ included Dr. Cooley's affirmative diagnoses in his severity finding. Tr. 22. Dr. Cooley's observations regarding Moore's physical impairments are adequately documented elsewhere. This court notes that Dr. Cooley made no work-related conclusions and did not suggest Moore could not sustain employment. For these reasons, this court finds that the ALJ adequately

considered Dr. Cooley's opinion and included his supported diagnoses in his step two findings. The ALJ's evaluation of Dr. Cooley's opinion should be sustained.

### *Examining Psychologist Julia Wong-Ngan, Ph.D.*

Moore suggests that "the ALJ has accepted only the portion of Wong-Ngan's report showing an invalid MMPI and, again has disdained the portion supporting disability." Pl. Opening Br. 18. Moore also claims the ALJ failed to explain what weight he accorded Dr. Wong-Ngan. Pl. Opening Br. 19.

The ALJ discussed Dr. Wong-Ngan's December 2002 psychological evaluation, noting Dr. Wong-Ngan's "diagnoses of major depression, single episode, severe, without psychotic features, rule out methamphetamine abuse, and a personality disorder..." Tr. 25. As with Dr. Cooley, the ALJ included these diagnoses in his step two severity finding. Tr. 22. Moore's submission that the ALJ "accepted only the portion of Wong-Ngan's report showing an invalid MMPI" is not supported by the record. As such, this argument fails.

The ALJ considered Dr. Wong-Ngan's Mental Residual Functional Capacity (MRFC) form, but concluded, "this opinion is given little weight because it is inconsistent with [Dr. Wong-Ngan's] narrative report which indicates an opinion that the claimant has moderate limitations in concentration, persistence, and pace and moderate limitations in social functioning." Tr. 29.

Dr. Wong-Ngan completed an MRFC form in December 2002. Here she endorsed "moderate" restrictions in Moore's ability to understand and remember detailed instructions, carry out detailed instructions, maintain concentration and attention for extended periods, and perform activities within a schedule. Tr. 331-32. Dr. Wong-Ngan also endorsed moderate

13 - FINDINGS AND RECOMMENDATION

restrictions in Moore's ability to work with others, interact appropriately with the general public, get along with co-workers, and respond appropriately to changes in a work setting. Tr. 332. Dr. Wong-Ngan endorsed both "moderate" and "marked" restrictions in Moore's ability to maintain concentration and attention for extended periods and complete a normal workday or workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. Tr. 332. Dr. Wong-Ngan also endorsed "marked" restrictions in Moore's ability to "accept instruction and respond appropriately to criticism from supervisors." Tr. 332. Dr. Wong-Ngan finally indicated that Moore is not compliant with treatment. *Id.*

> Dr. Wong-Ngan's narrative report concluded,
>
>> Regarding social security disability criteria, she appears moderately impaired in ADLs due to depression and low motivation. Social functioning appears severely impaired. Concentration, persistence, and pace appear moderately impaired. She has had no psychiatric decompensations. Substance abuse probably has contributed to dysfunction in the last few years, but has not been the primary contributor to her lifetime of dysfunction

Tr. 330.

The ALJ's finding that Dr. Wong-Ngan's endorsement of "marked limitations" on the MRFC form was unsupported by her narrative report is therefore supported by the record. This court finds that the ALJ included all adequately supported diagnoses in his findings, and notes that an ALJ may reject unsupported limitations. *See Bayliss*, 427 F.3d at 1216. The ALJ's analysis of Dr. Wong-Ngan's opinion should be sustained.

### *Examining Physician Dr. Cheek*

Moore finally suggests "The ALJ rejected completely her supportive conclusions. Again,

14 - FINDINGS AND RECOMMENDATION

his reasons are insufficient. Much of Cheek's report is objective and corroborated by other evidence." Pl. Opening Br. 19. Moore does not point to specific evidence supporting this assertion.

The ALJ wrote:

> I have considered the opinion of Disability Determination Services (DDS) medical consultants... However, I have given greater weight to the opinion of examining physician Dr. Cheek that the claimant is limited to a modified range of sedentary exertion. While Dr. Cheek opined that the claimant could lift no more than 10 pounds, examination findings reveal a greater capacity to lift with her left upper extremity. Accordingly, in that regard, I have given greater weight to the opinion of DDS medical consultants that the claimant can lift up to 20 pounds occasionally with the left upper extremity only.

Tr. 29.

Regarding Moore's statements to Dr. Cheek, the ALJ found that, "Dr. Cheek's further opinion that the claimant is unable to maintain a modified range of sedentary work for a full eight-hour day is not accepted. Dr. Cheek acknowledged that she based her opinion on the subjective reports of the claimant." Tr. 29. The ALJ may reject aspects of a physician's report based upon statements made by a claimant deemed not credible. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). For this reason, the ALJ's analysis of Dr. Cheek's opinion should be sustained.

### *Other Physicians of Record*

In her credibility discussion, Moore suggests the ALJ failed to adequately explain the weight given to her "depressive presentation" noted by Drs. Van Sickle, Schafir, Mills, and

15 - FINDINGS AND RECOMMENDATION

Wayson. Pl. Opening Br. 18. Moore does not suggest what weight the ALJ should have accorded these opinions. The indicated sources do not suggest that Moore was incapacitated or disabled by her "depressive presentation." As noted, the ALJ is not required to discuss evidence "neither significant nor probative.". *Howard*, 341 F.3d at 1012. For this reason, the ALJ's treatment of these sources should be sustained.

### *Combined Impairments*

Plaintiff also argues that the ALJ failed to determine whether the combined conditions meet or equal a listing at step three of the sequential process. However, the ALJ properly considered this issue. The ALJ specifically noted that plaintiff's impairments, severe and nonsevere, considered singly and in combination, were not attended by medical findings which met or equaled the requirements of impairments in the Listing of Impairments. (Tr. 22). The ALJ also noted that no treating or examining physician has mentioned findings medically equivalent in severity to any listed impairment. Id. See also p.p. 15-17 of Defendant's Brief.

### *Conclusion: Medical Sources*

In conclusion, the record supports the ALJ's evaluation of Moore's testimony and the medical opinions. This court must affirm an ALJ's decision that is based upon the proper legal standards and supported by the evidence. *Batson*, 359 F.3d at 1193.

### III.     Lay Witness Testimony

Moore suggests the ALJ's credibility decision failed to give weight to the opinion of nurse practitioner Dugan in light of her "depressive presentation." Opening Br. 18. Nurse practitioners are appropriately evaluated as "other" sources, or lay witnesses. 20 C.F.R. §§

16 - FINDINGS AND RECOMMENDATION

404.1513(d), 416.913(d).

The ALJ has a duty to consider lay witness testimony. 20 C.F.R. §§ 404.1513(d); 404.1545(a)(3), 416.913(d), 416.945(a)(3); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). The ALJ may not reject such testimony without comment, but he may reject lay testimony inconsistent with medical evidence. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996); *Lewis*, 236 F.3d at 512. If an ALJ rejects lay witness testimony entirely, he must give reasons germane to the witness. *Nguyen*, 100 F.3d at 1467.

Omission of lay witness observations of a claimant in a work environment is not harmless. *Stout v. Commissioner*, 454 F.3d 1050, 1055-56 (9th Cir. 2006). Nurse Practitioner Dugan treated Moore during her 2002 incarceration. Tr. 213. Dugan made no observations of Moore's ability to function in a work environment, noting only that Moore was "vulnerable to [increased] anxiety [with] attendant stress." *Id.* Concurrent treatment records indicate that Moore was cleared for prison work duty. Tr. 219. For this reason, the ALJ's omission of Dugan's report was insignificant. This court will not recommend reversal for evaluation of such non-probative evidence or harmless error. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

## IV.    Vocational Expert Testimony

Moore suggests the ALJ should have included non-exertional limitations in his RFC calculation. Pl. Opening Br. 20. This step in Social Security proceedings involves the ALJ's questions to the vocational expert (VE). The ALJ must include all limitations supported by substantial evidence in his hypothetical question to the VE, but he may exclude unsupported limitations and disregard VE testimony based upon unsupported limitations. *Bayliss*, 427 F.3d at 1217; *Osenbrock v. Apfel*, 240 F.3d 1157, 1164-65 (9th Cir. 2001). The ALJ's questions to the

17 - FINDINGS AND RECOMMENDATION

VE included restrictions identified in Moore's appropriately supported RFC assessment. Tr. 501-02. Because the ALJ did not find further limitations supported by the medical record, it was not error for the ALJ to exclude these limitations from his hypothetical question. *Osenbrock*, 240 F.3d at 1164-5; *Magallanes*, 881 F.2d at 757.

Moore raises an additional argument regarding the ALJ's alleged failure to develop the record. Such development is appropriate only when ambiguities arise. *Armstrong v. Commissioner*, 160 F.3d 587, 590 (9th Cir. 1998). There are none here and the ALJ's analysis of the record is sufficient. All of plaintiff's other arguments have been considered and found unpersuasive

## CONCLUSION

The decision of the Commissioner should be affirmed and this action should be dismissed.

IT IS SO ORDERED.

Dated this 23 day of January, 2007.

Thomas M. Coffin
United States Magistrate Judge

18 - FINDINGS AND RECOMMENDATION